UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LAKISCHA DIONNE WILLIAMS. | Criminal No. 3:08cr238 (JBA)<br><br>May 14, 2014 |

**RULING ON THE GOVERNMENT'S MOTION FOR RECONSIDERATION**

The Government moves [Doc. # 82] for reconsideration of the Court's orders [Doc. ## 80, 81] imposing a 7% wage garnishment and modifying the terms of supervised release for Defendant Lakischa Williams. For the reasons that follow, the Government's motion is denied.

**I.      Legal Standard**

Although neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules expressly provide for motions for reconsideration, it is permissible to file reconsideration motions in criminal cases and such motions are governed by the same standard applicable to the equivalent civil filing. *United States v. Green*, No. 3:12cr193 (VLB), 2013 WL 424621, at *4 (D. Conn. Feb. 1, 2013) (citing *United States v. Clark,* 984 F.2d 31 (2d Cir. 1993)).

Motions for reconsideration require the movant to set "forth concisely the matters or controlling decisions which [the movant] believes the Court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c)1. The Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4478). This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). If "the moving party seeks solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision. *Id.*

## II.   Discussion

On July 20, 2010, this Court sentenced Defendant in connection with her role in a scheme to defraud her former employer, Bank of America, by stealing checks. The Court sentenced Defendant to one day of incarceration, a 36-month term of supervised release, and $315,655.36 in criminal monetary penalties in the form of restitution. (*See* Judgment [Doc. # 43] at 1–2.) Two special conditions of her supervised release required Ms. Williams to make restitution payments of $60 a month starting October 1, 2010 and to perform 250 hours of community service. (*See id.*) On August 26, 2013, the Court found that Ms. Williams had failed to comply with these two conditions and revoked [Doc. # 68] her supervised release and imposed a sentence of two days' incarceration.

On August 7, 2013, in an attempt to collect the restitution owed by Ms. Williams, the Government filed [Doc. # 56] an Application for Writ of Garnishment, seeking to garnish 25% of Ms. Williams' wages. On December 3, 2013, the Court held a hearing on this writ. Although the Government contended that the Court was statutorily obligated to impose a garnishment of 25%, the Court concluded that it had discretion to garnish a

lesser amount and imposed a garnishment of 7%. (*See* Writ of Garnishment Order [Doc. # 80].) After hearing from the parties and considering the financial documentation submitted by Ms. Williams, the Court explained its rationale:

> Having analyzed this documentation, having considered the arguments and observations of counsel, having considered the requirements on the defendant to provide the restitution for the criminal sums totaling $315,855.36, considering Ms. Williams's earnings, both—as defense counsel has described, recognizing that Ms. Williams is not being profligate about her money, is not living anything resembling the high life, is working, paying taxes, otherwise law abiding, in recognition that the victim is an institution[al] victim, not an individual victim, namely the slower repayment is not—does not inflict personal hardship . . . the Court will order a garnishment in the amount of 7 percent of her non-exempt disposable earnings . . . .

(Dec. 3, 2013 Hr'g Tr., Ex. 2 to Gov't's Reply [Doc. # 84] at 28.)

The Government now asks the Court to "reconsider the factors it relied upon in determining that the appropriate garnishment should be 7%, including (A) the method of calculation of Williams' ability to pay restitution; and (B) the identity and/or the financial circumstances of the victim." (Gov.'t's Mem. Supp. Reconsideration [Doc. # 82-1] at 5.)

**A.   Garnishment Amount**

Although the Government "maintains its contention that the Government is entitled to the full twenty-five percent of Williams' non-exempt disposable earnings" and that the Court cannot consider a defendant's ability to pay in imposing a garnishment, it does not explicitly ask the Court to reconsider these conclusions.[1] (*See id.* at 5–6.)

---

[1] Reconsideration of these conclusions is precluded by Local Rule 7(c)1, which requires that a motion for reconsideration be filed within fourteen days of the "the filing of the decision or order from which such relief is sought." On August 26, 2013, the Court issued an oral ruling from the bench, concluding that it had discretion to impose a wage

3

Instead, the Government asks the Court to "reconsider and clarify the factors it used to determine that 7% should be the designated amount of the garnishment to pay Williams' victims." (*Id.* at 6.)

The Government originally contended that under the Federal Debt Collection Procedures Act ("FDCPA") it was entitled to garnish 25% of Ms. Williams' wages, because 28 U.S.C. § 3205(a) defines "nonexempt disposable earnings" subject to garnishment as "25 percent of disposable earnings."  28 U.S.C. § 3002(9).  (*See* Gov.'t's Mem. Supp. Finding of Violations of Conditions of Supervision [Doc. # 58] at 8.)  It noted that in response to a motion to quash a petition for garnishment, the factors a court can consider "shall be limited" to only three enumerated ones that do not include the defendant's ability to afford her restitution obligations.  *See* 28 U.S.C. § 3202(d).  As a result, it argued, the Court cannot "consider whether or not the debtor can pay other creditors or meet other financial obligations" and must impose a 25% garnishment. (Gov.'t's Mem. Supp. Finding of Violations at 9.)  Defendant maintained that the Court had discretion to determine the appropriate amount of garnishment.  (Def.'s Mem. in Supp. of Mot. for Hearing [Doc. # 65] at 1.)

As the Court explained in its August 26, 2013 oral ruling, 28 U.S.C. § 3013 vests the Court with discretion "at any time on its own initiative or the motion of any interested person" to "make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter."

---

garnishment of less than 25% of Ms. Williams' wages and granted [Doc. # 66] Defendant's Motion [Doc. # 64] for a hearing to determine the appropriate amount to garnish.  The Government's motion for reconsideration was not filed until December 20, 2013 and thus would not be timely as to these conclusions.

Given this language, some courts have rejected arguments similar to those made by the Government and have concluded that they have discretion to impose a wage garnishment of less than 25% based on a defendant's financial circumstances even though this consideration is not specified in 28 U.S.C. § 3202(d).  *See, e.g., United States v. Kaye*, 93 F. Supp. 2d 196, 198–99 (D. Conn. 2000) ("The lack of such language in 3202(d) . . . . does not support an argument that Congress did not intend to permit consideration of financial circumstances in weighing the precise collection remedy to be allowed."); *United States v. Ogburn*, 499 F. Supp. 2d 28, 30 (D.D.C. 2007) ("The majority of the case law, limited as it is, holds that 25 percent is a ceiling, not a floor, for the amount to be garnished and that courts have authority to impose an amount below 25 percent."); *but see United States v. Hanhardt*, 353 F. Supp. 2d 957, 960–61 (N.D. Ill. 2004) (concluding that there "there is no justification in the law for lowering the amount of [the] garnishment" below 25% and "the law does not allow the court to make a determination as to whether the financial circumstances of [the defendant's] wife take priority over his legal obligation to pay restitution.").[2]

---

[2] Other Courts have determined that they have discretion regarding the garnishment percentage based on the language of 28 U.S.C. § 3205(a), which provides that a "court *may* issue a writ of garnishment" (emphasis added), and thereby vests courts with discretion regarding the issuance of a writ in the first instance. *See, e.g., United States v. George*, 144 F. Supp. 2d 161, 164 (E.D.N.Y. 2001) ("[C]ontrary to plaintiff's position, a 25% garnishment of disposable income (as opposed to any lesser amount) is not mandatory, and the court may properly consider the circumstances of this individual garnishee."); *United States v. Woods*, No. 97cr0157 (WHS), 2010 WL 4386900, at *2 (S.D. Ala. Oct. 29, 2010) ("Federal courts have routinely found that § 3013 and § 3205, read in tandem, confer authority for district courts to modify or reduce garnishment orders based on a judgment debtor's individual circumstances.").

The Government now contends, however, that "irrespective of the issue of the Court's discretion to lower the amount of the garnishment, the record at hearing does not reflect support for a reduction to 7%." (Gov.'t's Mem. Supp. Reconsideration at 7.) Specifically, the Government contends that Ms. Williams' "financial disclosure was not current, far from complete, and was submitted in an untimely manner," and as a result "the Court and the Government did not have the opportunity to conduct a meaningful analysis of the information provided by Williams, nor her current financial circumstances and ability to pay restitution." (*Id.* at 6.) Specifically, the Government contends that the financial disclosure was submitted belatedly on November 28, 2013, Thanksgiving Day, despite the fact that the Court had ordered [Doc. # 66] counsel to file memorandum in support of their garnishment positions by October 3, 2013. Additionally, the financial statement was dated October 14, 2013, and thus not current, and only limited and non-current supporting documentation was submitted. (Gov.'t's Mem. Supp. Reconsideration at 6.)

The Government contends that this documentation consisted only of a single monthly statement from the Defendant's Credit Union account for the month of September 2013, and pay stubs for July 27, 2013 through October 19, 2013, but did not include tax returns, and her overtime hours and commensurate pay were not accurately reflected in her financial statement or supporting documentation. In addition, the Government contends that "a working adult child, non-dependent" is living with Ms. Williams, but there was no accounting as to any expenses or income contributed by this familial roommate. (*Id.*)

Despite the Government's complaints regarding the timeliness and quality of Ms. Williams' financial disclosures, it did not request a continuance before the December 3, 2013 hearing. Ms. Williams' financial situation was hardly complicated and the Government had two business days to review her disclosures before the hearing. Although the documentation submitted by Ms. Williams was lacking, the Court had before it three months of pay stubs and sufficient information regarding her income and expenses to gain an understanding of her financial position and to conclude that Ms. Williams was "not being profligate about her money" or "living anything resembling the high life." (Dec. 3, 2013 Hr'g Tr. at 28.) Given Ms. Williams' limited financial means, her pay stubs were the most important indicator of her ability to pay restitution and thus the Court had sufficient information to estimate her average earnings.

In selecting the 7% figure, the Court endeavored to ensure that Ms. Williams continued to make significant contributions towards paying her restitution obligations without forcing her into poverty or derailing her rehabilitation from a convicted criminal into a working and law-abiding citizen. *See., e.g., Ogburn*, 499 F. Supp. 2d at 32 ("The garnishment of 25% of the Defendant's disposable income has made it virtually impossible for the Defendant to maintain her family's pre-existing standard of living.").

Given that Ms. Williams' monthly wages fluctuate, it is uncertain exactly what monthly contribution will result from a 7% garnishment, but notably, it is likely to be double the $60 per month contribution that was previously required as a special term of her supervised release. (*See* Def.'s Mem. Opp'n Mot. Reconsideration [Doc. # 83] at 2.) As the Government has provided no justification for the Court to reconsider its

conclusion that Ms. Williams could not afford to pay more than 7% of her salary towards restitution, reconsideration of this decision is denied.

### B. Identity of the Victim

In selecting a garnishment of 7%, the Court explained that a part of its rationale was that the victim was an institution rather than an individual and thus "the slower repayment . . . does not inflict personal hardship." (Dec. 3, 2013 Hr'g Tr. at 28.)  The Government contends that the "fact that the victim of a crime is a financial institution should not have any bearing on the payment of restitution." (Gov.'t's Mem. Supp. Reconsideration at 7–8.)

In support of this argument, the Government cites *United States v. Clausen*, 792 F.2d 102, 107 (8th Cir. 1986), in which the Eight Circuit rejected a defendant's contention that "the financial condition of the victim is somehow relevant to the amount of restitution an offender may be required to pay" and that "[s]uch a Robin Hood philosophy is hardly relevant to a system of justice based on equality under the law."  The Court has not, however, considered the identity of the victim in determining the total amount of restitution that Ms. Williams has been required to pay as a part of her sentence.  Instead, in exercising its discretion to fashion a payment schedule, the Court considered the balance of the hardships and Ms. Williams' very limited means to make payments compared with the ability of Bank of America to withstand a delayed repayment schedule.  The identity of the victim was just one of the factors that the Court considered in exercising its discretion to determine the appropriate payment schedule, but it did not excuse Ms. Williams from paying restitution based on the identity of the

victim. Accordingly, *Clausen* is inapposite and the Government's "Robin Hood" argument misses the mark.

### III. Conclusion

For the reasons set forth above, the Government's Motion [Doc. # 82] for Reconsideration is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 14th day of May, 2014.